# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| AUTOMOBILI LAMBORGHINI AMERICA, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> GOLD COAST EXOTIC IMPORTS, LLC, d/b/a Lamborghini Gold Coast, an Illinois limited liability company; JOSEPH J. PERILLO, SR., an individual; and TAHIR ALI KANWAR, an individual, <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Automobili Lamborghini America, LLC, for its Complaint against Defendants Gold Coast Exotic Imports, LLC, Joseph J. Perillo, Sr., and Tahir Ali Kanwar, states as follows:

## NATURE OF ACTION

1. This case concerns a Lamborghini dealer's long-running and long-concealed scheme to defraud its distributor, Automobili Lamborghini America, LLC ("ALA"), out of millions of dollars that ALA paid to the dealer under the Lamborghini bonus program.

2. Lamborghini is among the world's most iconic automotive brands. Over the last 60 years, Lamborghini has created an unparalleled series of ultraluxury sports cars, including the 350 GT, Miura, Countach, and Aventador, among many others.

3. ALA is the U.S. importer and distributor of Lamborghini vehicles. But state laws prohibit ALA from operating dealerships or selling motor vehicles directly to customers. As a result, ALA must rely on independent, authorized Lamborghini dealers as its primary connection

1

to Lamborghini customers, and as the face of its distinctive brand to the broader public. Currently, there are only 40 such dealers in the United States, and only two in Illinois.

4. One way that ALA ensures dealers protect the Lamborghini brand is by prohibiting them from selling new Lamborghini vehicles to anyone other than bona fide retail customers. Sales to brokers, re-sellers, and other non-retail customers are not allowed. Dealers are obligated to perform sufficient due diligence to avoid selling new Lamborghini vehicles unwittingly to non-retail customers.

5. This prohibition on non-retail sales is crucial to ensuring that members of the public seeking to purchase Lamborghini vehicles receive the level of customer service and support they deserve in their purchase and ownership of an exclusive luxury sports car, and likewise, to preserving Lamborghini's carefully crafted and hard-won position in that market.

6. A dealer who fails to abide by this prohibition materially breaches its contract with ALA, and is therefore ineligible to receive any bonus payments under ALA's dealer incentive bonus program.

7. ALA's only Chicago dealer, Gold Coast Exotic Imports, LLC ("Gold Coast"), knows of this prohibition. Since at least 2019, however, Gold Coast has operated a shadow program to knowingly but covertly sell numerous new Lamborghini vehicles to non-retail customers.

8. Gold Coast has reported supposed retail sales to ALA, as it must in the normal course of business, that were in reality sales to brokers, re-sellers, or other non-retail customers. For example, Gold Coast reported to ALA that it made new vehicle sales to the head of a chiropractic clinic in Minnesota and to a former professional athlete in Chicago, when in fact Gold Coast made those sales to known re-sellers and other non-retail customers. These re-sellers—the

actual purchasers—included an individual convicted of laundering money for drug dealers and pimps through luxury vehicle transactions, and a Miami car dealership operated by an individual convicted of financial crimes.

9. These are not isolated incidents, but a repeating pattern, with multiple sales to the same concealed customers over short periods of weeks or months, with consistent misrepresentations to ALA about the identity of the buyers of the vehicles.

10. Gold Coast made these misrepresentations to induce ALA to pay millions of dollars of bonuses to Gold Coast that it was never entitled to receive.

11. And Gold Coast has denied ALA access to any of its sales and financial records pre-dating September 2022, in breach of ALA's contractual audit rights, to further conceal the extent of its fraudulent scheme.

12. ALA believes discovery will reveal that these practices are merely one part of a larger program of deception, and that Gold Coast and its employees have engaged in other misconduct, including demanding off-the-books kickbacks from customers amounting to hundreds of thousands of dollars for Gold Coast, to agree to sell exclusive limited-edition vehicle models to those customers.

13. ALA brings this action to remedy these wrongs.

## PARTIES

14. ALA is a Delaware limited liability company with its principal place of business in Virginia. ALA's sole member is Volkswagen Group of America, Inc. ("VWGoA"). VWGoA is a corporation organized under the laws of the state of New Jersey, with its principal place of business in Herndon, Virginia.

15. Gold Coast is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

3

16. Gold Coast operates Lamborghini Gold Coast at 834 North Rush Street, Chicago, Cook County, Illinois 60611. Gold Coast also operates a second authorized Lamborghini dealership, Lamborghini Downers Grove, at 330 Ogden Avenue, Downers Grove, DuPage County, Illinois 60515.

17. At all relevant times, Joseph J. Perillo, Sr. ("Perillo") was the President of Gold Coast.

18. At all relevant times, Tahir Ali Kanwar ("Kanwar") was a salesperson and brand manager employed by Gold Coast.

## JURISDICTION AND VENUE

19. Jurisdiction is proper under 28 U.S.C. § 1332(a) because the parties' citizenship is completely diverse and the amount in controversy exceeds $75,000.

20. As a limited liability company, ALA is a citizen of all states of which its members are citizens. As a wholly owned subsidiary of VWGoA, ALA shares its citizenship with VWGoA. Accordingly, ALA is a citizen of the states of New Jersey and Virginia and of no other state.

21. As a limited liability company, Gold Coast is a citizen of all states of which its members are citizens. Upon information and belief, Gold Coast's sole member is Perillo, who is a citizen of Illinois and no other state. Accordingly, Gold Coast is a citizen of the state of Illinois and of no other state.

22. Upon information and belief, Kanwar is a citizen of Illinois and no other state.

23. The amount in controversy exceeds $75,000.

24. Venue is proper in the Eastern Division of the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred at Gold Coast's dealership located in Cook County, Illinois.

**FACTUAL BACKGROUND**

A.     **The Dealer Agreement**

25.    On or about December 11, 2009, ALA and Gold Coast entered into a dealer agreement (the "Dealer Agreement") under which Gold Coast would operate an authorized Lamborghini dealership in Chicago's Gold Coast neighborhood.

26.    The Dealer Agreement authorized Gold Coast to operate its Showroom, Authorized Automobile Storage Facilities and Used Car Lot at 834 Rush Street, Chicago, Illinois, 60611. The Dealer Agreement also authorized Gold Coast to operate its Service Facilities and Genuine Parts Storage Facilities at 530 West Chicago Avenue, Chicago, Illinois 60611.

27.    Perillo executed the Dealer Agreement on behalf of Gold Coast. At all relevant times, Perillo was the President of Gold Coast and acting as an authorized manager and agent thereof, with the authority to bind Gold Coast to the terms and conditions of the Dealer Agreement.

28.    In this role, Perillo is integral to and intimately involved in the day-to-day operations of his Lamborghini dealership.

29.    Perillo stays well informed of all dealership activities, sales and customer information.

30.    Perillo regularly communicates with his employees, providing direction with respect to dealership operations and practices.

31.    The Dealer Agreement prohibits Gold Coast from "sell[ing] the Contractual Products to anyone other than retail customers, vehicle lessors or other authorized [ALA] dealers." (Dealer Agreement, Part II, art. 3, ¶ 5.)

32.    In addition, the Dealer Agreement provides that "[a]side from sales to other authorized [ALA] dealers, dealer shall not sell Contractual Products for resale." (*Id.* at Part II, art. 3, ¶ 4.)

33. Contractual Products under the Dealer Agreement include new Lamborghini motor vehicles. (Dealer Agreement Appendices, App. 4.)

**B.  ALA's Sales Policies**

34. ALA issues Sales Policies applicable to authorized U.S. Lamborghini dealerships, including Lamborghini Gold Coast.

35. The Sales Policies are essential to maintaining Lamborghini's reputation as an exclusive, luxury vehicle brand and require consistent implementation of sales practices and standards across the country.

36. ALA updates the Sales Policies regularly based on its experience and the changing market demands, and therefore "reserve[s] the right, with or without notice, to amend, change, modify, or add to [the] Sales Policies at any time." (ALA Sales Policies 2023, at Intro.)

37. In line with the purposes of these Sales Policies, ALA works to ensure that its dealers sell new Lamborghini vehicles to actual retail customers—rather than to resellers and brokers who resell the vehicles for inflated prices—in order to protect its brand image and customer satisfaction.

38. These efforts are reflected in all Sales Policies covering the relevant time period, which provide, in effect, that "a Lamborghini Dealer is prohibited from selling or participating in the sale of a new Lamborghini vehicle to a wholesaler, an independent, a broker, or anyone that the Dealer knows or reasonably should have known is a dealer that is not an authorized Lamborghini dealer[.]" (*Id.* at 11.)

39. The Sales Policies further prohibit dealers from selling new Lamborghini vehicles "to anyone that the Dealer knows or reasonably should have known intends to sell the vehicle to a

wholesaler, an independent, a broker, or a dealer that is not an authorized Lamborghini dealer." (*Id.*)

40. At all relevant times, these prohibitions on sales to non-retail customers applied to Gold Coast.

41. Under the Sales Policies, dealers like Gold Coast are required to "engage in due diligence to confirm that the customer to whom it is selling a vehicle is an actual retail customer that does not intend to transfer the vehicle to a broker" and must retain documentation of their due diligence. (*Id.*)

42. ALA specifically reserves the right to audit dealers' records to ensure compliance with the Dealer Agreement and Sales Policies. (*Id.*)

43. Further, ALA puts dealers, including Gold Coast, on notice that "[a]ny vehicle sold in violation of this policy will not count towards Dealer's sales rate for future vehicle allocation purposes." (*Id.*)

44. In addition to circulating updated Sales Policies effective January 1, 2023, ALA amended its Sales Policies in April 2023 to respond to increasing concerns related to improper sales to non-retail customers.

45. While the majority of the key terms in the Sales Policies remained unchanged, the April 2023 Amendment explained that "[a]lthough ALA has repeatedly advised dealers to adhere to its prohibition on the sale of new Lamborghini vehicles to anyone other than a bona fide retail customer, sales to resellers and brokers have continued. This practice is detrimental to customer satisfaction, and it damages the Lamborghini brand." (*See* Amendment to ALA Sales Policies 2023.)

7

**C.     ALA's Dealer Incentive Bonus Program**

46.     ALA operates a dealer incentive bonus program ("Bonus Program") under which dealers can receive multi-thousand-dollar bonuses per new vehicle sold.

47.     Under the Bonus Program, ALA offers a number of incentives to its dealers, including per-vehicle bonuses based on various categories. The 2023 categories include:

   a. Delivery to Customer and Demonstrators;

   b. Training Certifications;

   c. Marketing;

   d. Customer Data Quality and Enquiry Management and Order Quality;

   e. Optional and Ad Personam Target;

   f. Accessories Target;

   g. Unica App Registration; and

   h. CPO.

48.     More specifically, under all versions of the Bonus Program from 2019 to present, to earn the Delivery to Customer and Demonstrator, or equivalent category bonus, dealers must: (1) attain "100% achievement of the quarterly Delivery to Customer Target," and (2) "correctly report in LOOM [Lamborghini Online Order Management] each vehicle delivery to a final retail customer;" and (3) "properly document the delivery of each vehicle to the final customer and maintain such documentation in its records." (ALA Bonus Program 2023, Sec. 3(A)(1).)

49.     Dealers must fully comply with their Dealer Agreements to be eligible to participate in the Bonus Program and to receive any bonuses under that program. (*Id.* at Sec. 1(B).)

50.     From 2019 through present, ALA has paid more than $4 million in bonuses to Gold Coast under the Bonus Program.

**D.     Gold Coast's Prohibited Sales Practices**

51.     Since at least 2019, Gold Coast has repeatedly sold new Lamborghini vehicles to individuals and companies who it knew at the time of sale were and are unauthorized dealers, wholesalers, brokers, and/or other non-retail customers, in violation of the Dealer Agreement and ALA Sales Policies.

52.     Gold Coast purposefully concealed the identity of these purchasers to mislead ALA into believing the transactions were legitimate.

53.     For example, in March 2023, Gold Coast falsely reported to ALA that it sold a new Lamborghini Urus ("Urus #1") to a Chicago-based former professional athlete.

54.     As shown by records Gold Coast concealed from ALA—which were only revealed when ALA implemented an audit of Lamborghini Gold Coast's records—Urus #1 was actually sold to a Montana LLC that is owned and/or managed by an individual who is a known luxury vehicle re-seller and previously pleaded guilty in a criminal fraud case that involved selling luxury cars to drug dealers and pimps as a means of laundering money.

55.     Gold Coast also sold another new Lamborghini Urus ("Urus #2") to the same Montana LLC and knowingly concealed from ALA that the same criminal referred to above was involved in the purchase.

56.     Gold Coast intentionally misrepresented the sales of Urus #1 and Urus #2 to ALA and intentionally misled ALA regarding the identity of the purchaser in reporting a different purchaser to ALA for each of these vehicles.

57.     As another example of Gold Coast's misconduct, in August 2022, Gold Coast falsely reported to ALA that it sold a 2022 Lamborghini Huracan ("Huracan #1") to the CEO of a chiropractic clinic in Minnesota.

9

58. Gold Coast actually sold Huracan #1 to a known convicted criminal who runs a luxury vehicle sales and rental service in Miami, Florida.

59. The Huracan #1 was registered in Miami in April 2023.

60. Huracan #1 was recently posted for auction on a Ukrainian luxury car resale platform, which advertises that the vehicle has been driven fewer than 30 miles.

61. Gold Coast concealed the true purchaser of Huracan #1 from ALA and intentionally misrepresented the purchaser's identity to ALA in reporting a different purchaser to ALA for this vehicle.

62. Three weeks later, Gold Coast sold another Lamborghini Urus ("Urus #3") to the same Miami-based re-seller but reported to ALA that the car was sold to a Chicago resident.

63. Gold Coast intentionally made a false statement with respect to the sale of Urus #3 and intentionally misled ALA.

64. Based on its audit, ALA identified at least 32 transactions in the past year indicating sales to non-retail customers. These transactions each meet at least one of the following criteria: the customer's name on Gold Coast's files does not match the name reported to ALA; repeated sales within a 3-month period to the same person and/or family; sales to individuals with known associations to the automotive industry or luxury rental companies; and sales to individuals with criminal histories involving fraud.

65. Gold Coast has prevented ALA from identifying other examples of knowing misrepresentations of sales to re-sellers and brokers by denying ALA access to Gold Coast's records pre-dating September 2022.

66. Upon information and belief, Gold Coast's records pre-dating September 2022 would show similar transactions and knowing misrepresentations dating back to at least 2019.

67. Gold Coast misrepresented these sales to ALA to avoid scrutiny of its sales practices and to obtain bonus payments from ALA to which it was not entitled under ALA's Bonus Program.

68. Upon information and belief, Gold Coast knew that all of these sales were to non-retail customers.

69. Gold Coast ignored suspicious buying patterns of other purchasers that would alert a reasonable dealer to non-retail activity and knowingly sold vehicles to individuals openly associated with luxury car resale operations and criminal enterprises.

70. Further, Gold Coast knowingly concealed the identity of buyers by submitting buyer information to ALA via ALA's sales reporting system (Lamborghini Online Order Management or "LOOM") that did not match the buyer information reflected in Dealer's own files.

71. Gold Coast misrepresented these sales to non-retail customers as qualifying sales to mislead ALA into believing the sales were legitimate, to induce ALA to pay bonuses under the Bonus Program, and to receive those bonuses from ALA.

72. Both Kanwar and Perillo were and are key participants in and enablers of Gold Coast's fraudulent scheme.

73. Kanwar carried out the day-to-day steps necessary to perpetrate this fraud on ALA. Kanwar handled all material aspects of the Huracan and Urus sales described above, in addition to many other sales that fit the same pattern.

74. Kanwar completed the sales paperwork for the concealed purchasers of the vehicles, submitted the sham buyer information to ALA, and facilitated delivery of the vehicles to the true buyers, all with the overarching goal of concealing the identities of the true buyers of the

11

vehicles from ALA. Kanwar's knowing and substantial participation in this fraud has been crucial in its perpetration.

75. Upon information and belief, Perillo provided overall direction for these fraudulent activities, instructing Kanwar and other Gold Coast employees to conceal and misrepresent the identities of purchasers of the vehicles to enable Gold Coast to hide its actions from ALA and obtain bonuses to which Gold Coast was not entitled. The fruits of the scheme inured directly to Perillo's benefit through his ultimate ownership of Gold Coast.

76. Gold Coast's illicit conduct relating to sales of luxury vehicles is not limited to sales to non-retail customers, nor is it limited to falsification of customer information.

77. Rather, upon information and belief, discovery will reveal facts to support that Gold Coast's improper sales to re-sellers are part of a larger kickback scheme employed by Gold Coast and its employees designed to benefit Gold Coast and its employees at ALA's expense.

78. ALA has recently learned that Gold Coast is engaged in a kickback scheme to extort prospective customers of another luxury brand sold by Gold Coast.

79. Specifically, under this scheme, Gold Coast offers to sell luxury vehicles to retail and/or non-retail customers on the condition that those customers pay hundreds of thousands of dollars to the employees' personal bank accounts, knowing that there is high customer demand for such vehicles and very limited supply.

80. Gold Coast refuses to sell these highly sought-after vehicles to customers who refuse to make these payments.

**E.     Gold Coast's Breach of ALA's Audit Rights Under the Dealer Agreement**

81. The Dealer Agreement permits ALA "to inspect the accounts of Dealer relating to Dealer's business activity hereunder and to make copies thereof for purposes of verifying that

Dealer has complied and continues to comply with its obligations under" the Dealer Agreement. (Dealer Agreement, Part II, art. 11, ¶ 3).

82. The Dealer Agreement does not limit the period for which ALA is permitted to review and inspect Gold Coast's documents and records.

83. As Gold Coast's pattern of suspicious transactions grew apparent, ALA informed Gold Coast that an audit of Gold Coast's sales records would take place at Lamborghini Gold Coast, as permitted under the Dealer Agreement. As part of this audit, ALA requested to see all of Gold Coast's sales records going back five years.

84. Gold Coast repeatedly obstructed ALA's inspection, first by wrongfully denying ALA access to documents for the requested five-year period, then by attempting to re-schedule the review at the last minute contrary to Gold Coast's original commitment.

85. Upon information and belief, a full review of the records Gold Coast has withheld would provide further evidence of the fraudulent conduct and unauthorized sales practices described above.

## COUNT I
**(Fraud against Gold Coast, Perillo and Kanwar)**

86. The information contained in paragraphs 1–85 is incorporated as if set forth fully herein.

87. Pursuant to the terms of ALA's Bonus Program, Gold Coast is not eligible for bonuses if it fails to comply with the Dealer Agreement.

88. The Dealer Agreement prohibits Gold Coast from making sales of new Lamborghini vehicles to individuals and entities other than retail customers.

89. At least as early as 2019, Gold Coast knowingly misrepresented to ALA that its sales were to retail customers, and thus that it was operating in compliance with the Dealer

Agreement, when in fact, Gold Coast was selling to individuals and entities for re-sale and other non-retail purposes.

90. Gold Coast knew that these were sales to non-retail customers, and thus that the sales violated the Dealer Agreement and Sales Policies.

91. Gold Coast willfully ignored suspicious buying patterns of purchasers that would alert a reasonable dealer to non-retail activity and knowingly sold vehicles to individuals openly engaged in the business of re-selling luxury vehicles and other non-retail use.

92. Further, Gold Coast concealed and misrepresented the true identity of buyers from ALA by submitting customer information into ALA's online system that did not match the information in Gold Coast's own records.

93. Despite knowing that these sales violated the Dealer Agreement and Sales Policies, Gold Coast represented to ALA that the sales were to retail customers and therefore qualified for the bonus payments.

94. ALA relied on these misrepresentations to its detriment, paying Gold Coast bonuses to which it was not entitled.

95. As described above, Kanwar and Perillo both participated in and aided and abetted this fraud, providing substantial and knowing assistance in the scheme, all to ALA's injury.

WHEREFORE, ALA requests that this Court enter judgment against Gold Coast, Perillo, and Kanwar, award actual and punitive damages and reasonable attorneys' fees to ALA, and enter all other relief the Court deems fair and just.

## COUNT II
### (Breach of Contract against Gold Coast)

96. The information contained in paragraphs 1–85 is incorporated as if set forth fully herein.

97. The Dealer Agreement is a valid, binding, and enforceable contract between ALA and Gold Coast.

98. ALA has performed all of its duties under the Dealer Agreement.

99. Gold Coast breached the Dealer Agreement by selling Lamborghini vehicles to non-retail customers in direct violation of the express terms of the Dealer Agreement.

100. Gold Coast further breached the Dealer Agreement by obstructing ALA's audit of Lamborghini Gold Coast's records, thereby prohibiting ALA from discovering the full scope of Gold Coast's wrongful conduct.

101. ALA has suffered monetary harm as a result of Gold Coast's breaches.

WHEREFORE, ALA requests that this Court enter judgment against Gold Coast, award actual damages as calculated by the Court and reasonable attorneys' fees to ALA, and enter all other relief the Court deems fair and just.

Dated: January 5, 2024

Respectfully submitted,

AUTOMOBILI LAMBORGHINI AMERICA, LLC



_____
One of its Attorneys

Owen H. Smith (ARDC # 6307554)
owen.smith@bfkn.com
Nicholas W. Laird (ARDC # 6313305)
nick.laird@bfkn.com
Murphy Olivia Glass (ARDC # 6342182)
olivia.glass@bfkn.com
BARACK FERRAZZANO KIRSCHBAUM &
   NAGELBERG LLP
200 West Madison, Suite 3900
Chicago, Illinois 60606
T: (312) 984-3100
F: (312) 984-3150