UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTOMOBILI LAMBORGHINI <br> AMERICA, LLC, <br><br> Plaintiff, <br> v. <br><br> GOLD COAST EXOTIC IMPORTS, LLC, <br> d/b/a LAMBORGHINI GOLD COAST; <br> JOSEPH J. PERILLO, SR; and TAHIR ALI <br> KANWAR, <br><br> Defendants. | Case No.1:24-cv-00162 <br><br> **Hon. Rebecca R. Pallmeyer** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

FACTUAL ALLEGATIONS .......................................................................................................... 2

LEGAL STANDARD ...................................................................................................................... 4

ARGUMENT ................................................................................................................................... 5

    I.     ALA Has Stated a Plausible Fraud Claim in Count I ............................................. 5

    II.    Defendants' Arguments That ALA Has Not Satisfied Rule 9(b) Are Meritless .... 7

    III.   Defendants' Argument That ALA's Fraud (Count I) and Contract (Count II)
           Claims Are Duplicative is Meritless ...................................................................... 11

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................................4

*Bucciarelli-Tieger v. Victory Records, Inc.*,
    488 F. Supp. 2d 702, 711 (N.D. Ill. 2007) ...............................................................................14

*Clay Fin. LLC v. Mandell*,
    No. 16 C 11571, 2017 WL 3581142 (N.D. Ill. Aug. 18, 2017) ............................................8, 9

*Connick v. Suzuki Motor Co.*,
    675 N.E.2d 584, 591 (Ill. 1996) .................................................................................................5

*Corely v. Rosewood Care Ctr., Inc.*,
    142 F.3d 1041 (7th Cir. 1998) .........................................................................................5, 7, 10

*DiLeo v. Ernst & Young*,
    901 F.2d 624, 627 (7th Cir. 1990) .............................................................................................4

*Endo v. Albertine*,
    812 F. Supp. 1479, 1497 (N.D. Ill. 1993) ..................................................................................8

*Evergreen Marine Corporation v. Division Sales, Inc.*,
    No. 01 C 4933, 2003 WL 1127905 (N.D. Ill. Mar. 12, 2003) .................................................10

*Firstar Bank, N.A. v. Faul Chevrolet, Inc.*,
    249 F. Supp. 2d 1029 (N.D. Ill. 2003) .....................................................................................10

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) .............................................................................11, 12, 13, 14

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016) .........................................................................................8

*Jepson, Inc. v. Makita Corp.*,
    34 F.3d 1321 (7th Cir. 1994) .................................................................................................7, 9

*NHC, LLC v. Centaur Constr. Co.*,
    No. 19 C 6332, 2023 WL 2525493 (N.D. Ill. Mar. 15, 2023) .................................................11

*NHC, LLC v. Centaur Constr. Co.*,
    No. 23-1719, 2023 WL 6368780 (7th Cir. Apr. 17, 2023) ......................................................11

*Petri v. Gatlin*,
    997 F. Supp. 956 (N.D. Ill. 1997) ..................................................................................................12

*Pierce v. Zoetis, Inc.*,
    818 F.3d 274 (7th Cir. 2016) ..........................................................................................................4

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ..........................................................................................................9

*Rumford v. Countrywide Funding Corp.*,
    678 N.E.2d 369 (Ill. App. Ct. 1997) ............................................................................................12

*Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*,
    897 F.3d 797 (7th Cir. 2018) ..........................................................................................................5

*Stephens v. C&K Trucking, LLC*,
    No. 20-CV-4305, 2021 WL 4978451 (N.D. Ill. May 17, 2021) .................................................11

*United States ex rel. Derrick v. Roche Diagnostics Corp.*,
    318 F.Supp.3d 1106 (N.D. Ill. 2018) ...................................................................................5, 8, 9

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
    772 F.3d 1102 (7th Cir. 2014) ......................................................................................................5

*United States ex rel. Hanna v. City of Chicago*,
    834 F.3d 775 (7th Cir. 2016) ....................................................................................................4, 5

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
    570 F.3d 849 (7th Cir. 2009) ...................................................................................................7, 10

*United States ex rel. Milazzo v. Joel Kennedy Constructing Corp.*,
    584 F. Supp. 3d 595 (N.D. Ill. 2022) .....................................................................................12, 13

*United States ex rel. Stop Illinois Marketing Fraud, LLC v. Addus HomeCare Corp.*, No. 13 CV 9059, 2017 WL 467673 (N.D. Ill. Feb. 3, 2017) .......................................5, 7

*United States ex rel. Upton v. Fam. Health Network, Inc.*,
    900 F. Supp. 2d 821 (N.D. Ill. 2012) .............................................................................................7

*United States v. Ortho-McNeil Pharm., Inc.*,
    No. 03 C 8239, 2007 WL 2091185 (N.D. Ill. July 20, 2007) .......................................................7

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act ....................................................12

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................... *passim*

## **INTRODUCTION**

Plaintiff Automobili Lamborghini America, LLC ("ALA") filed this action to recover damages it suffered because of a Lamborghini dealer's long-concealed fraudulent scheme. In its Complaint, ALA alleges that Defendants Gold Coast Exotic Imports, LLC ("Gold Coast"), Joseph J. Perillo ("Perillo"), and Tahir Ali Kanwar ("Kanwar") knowingly and intentionally concealed the identity of customers to whom Gold Coast sold new Lamborghini vehicles, for the purpose of procuring millions of dollars of bonus payments from ALA that Gold Coast was not entitled to receive. Gold Coast's sales breached its contract with ALA. Defendants' knowing and intentional misrepresentations to ALA about those sales worked a fraud.

Defendants now move for dismissal of ALA's fraud claim. The Court should deny the motion for at least two reasons. *First*, ALA alleges a plausible fraud claim with particularized factual allegations that exceed Rule 9(b)'s baseline requirements. ALA alleges an overarching fraudulent scheme, the "who, what, when, where, and how" of four fraudulent transactions that are representative examples of the scheme, and each Defendant's role in the scheme. Rule 9(b) requires nothing more. Defendants' contrary argument—*i.e.*, that ALA must allege more details about Defendants' internal operations—is misplaced. Most such facts are within Defendants' sole knowledge, and Defendants blocked ALA from learning more when, in breach of the Gold Coast's contractual obligations, they refused to let ALA inspect the dealership records.

*Second*, ALA's fraud claim stands on its own foundation and is not merely duplicative of its breach of contract claim. The Complaint alleges that Defendants did more than just breach a contractual promise to sell new Lamborghini vehicles only to retail customers. The Complaint also alleges that Defendants knowingly and intentionally reported false buyer information to ALA to

conceal these improper sales. ALA's fraud and breach of contract claims are therefore distinct from each other, and Defendants' motion should be denied.

## FACTUAL ALLEGATIONS

ALA is the U.S. distributor of the iconic, ultraluxury motor vehicle brand, Automobili Lamborghini. (Complaint, ¶¶ 1–2.) Because state laws prohibit ALA from selling directly to consumers, ALA relies on a network of authorized dealers to promote and maintain ALA's elite brand standards. (*Id.*, ¶ 3.) ALA governs these relationships through its Dealer Agreements and related Sales and Bonus Policies. (*Id.*, ¶¶ 25–50.)

Defendant Perillo is the President of Gold Coast, which operates two authorized Lamborghini dealerships in Illinois, including the dealership doing business as Lamborghini Gold Coast. (*Id.*, ¶¶ 16—17.) Perillo is closely involved in all aspects of the dealership's operations and oversees all sales transactions at the dealership. (*Id.* ¶¶ 28–30.) In addition, Perillo regularly instructs his employees regarding the dealership's practices, such as reporting sales to ALA. (*Id.*) Defendant Kanwar is a salesperson and brand manager at Lamborghini Gold Coast. (*Id.* ¶ 18.)

Under the Dealer Agreement and Sales Policies, dealers including Lamborghini Gold Coast are prohibited from selling Lamborghini vehicles to "anyone other than retail customers, vehicle lessors or other authorized [ALA] dealers." (*Id.* ¶¶ 31, 38). ALA reserves the right to audit dealer records to confirm compliance with the Dealer Agreement. (*Id.* ¶ 42). Under the Bonus Program, a dealer is eligible to earn variable per-vehicle bonuses only if dealer has complied with all terms of its Dealer Agreement. (*Id.* ¶ 49).

Since at least 2019, Lamborghini Gold Coast has violated the terms of its Dealer Agreement by selling Lamborghini vehicles to individuals and companies who it knew to be unauthorized dealers, wholesalers, brokers, or other non-retail customers. (*Id.* ¶ 51). In addition,

2

Gold Coast fraudulently used false names to conceal the identity of the true, non-retail buyers, to procure millions of dollars of bonus payments from ALA. (*Id.* ¶¶ 67–75.) Gold Coast did so under the direction of Perillo and with the help of Kanwar. (*Id.*)

In the Complaint, ALA provides details of several representative transactions and the actions that concealed the true buyer's information, which include:

- Sale of a new Lamborghini Urus in March 2023, reportedly to a Chicago-based former professional athlete. The vehicle was actually sold to a Montana LLC owned and/or managed by an individual who is a known luxury vehicle re-seller and previously pleaded guilty to criminal fraud involving laundering money through sales of luxury vehicles to drug dealers and pimps. (*Id.* ¶¶ 53–54)

- Sale of a separate new Lamborghini Urus to the same Montana LLC, while knowingly concealing the LLC's affiliation with the known reseller mentioned above. (*Id.* ¶ 55).

- Sale of a new Lamborghini Huracan in August 2022, reportedly to the CEO of a Minnesota chiropractic clinic, but that was actually sold to a known convicted criminal who operates a luxury vehicle sale and rental service in Miami, Florida. (*Id.* ¶¶ 57–58).

- Sale of a new Lamborghini Urus in August 2022 reportedly to a Chicago-based buyer, but that was actually sold to the same Miami-based re-seller. (*Id.* ¶¶ 62–63).

In each instance, Gold Coast fabricated a description of the buyer and submitted that false information to ALA through ALA's sales reporting system (Lamborghini Online Order Management or "LOOM"). (*Id.* ¶ 70.) Defendants knew that the buyer information they were submitting to ALA was false and did not match the buyer information reflected in their own files. *Id.* Perillo developed this scheme so that Gold Coast could obtain bonuses to which it was not entitled, and to that end he instructed his employees (including Kanwar) to submit false buyer information to ALA. (*Id.* ¶ 75). Kanwar followed Perillo's directives and executed the scheme by "submitt[ing] the sham buyer information to ALA." (*Id.* ¶¶ 73–74.)

ALA discovered these improper sales in September 2023 when it conducted an audit of Lamborghini Gold Coast's sales records for the preceding 12 months. (*Id.* ¶¶ 64, 81–85.) ALA believes that a review of prior years' records would reveal additional instances of these practices,

3

but Defendants have refused to provide documentation pre-dating the initial 12-month period, despite ALA's contractual right to audit the older records. (*Id.* ¶¶ 65, 81–85.)

In this lawsuit, ALA brings a claim for fraud (Count I) against all three Defendants based on their "conceal[ment] and misrepresent[ation] of the true identity of buyers from ALA by submitting customer information into ALA's online system that did not match the information in Gold Coast's own records." (*Id.* ¶¶ 89, 92.) In addition, ALA brings a breach of contract claim (Count II) against Gold Coast based on its sale of Lamborghini vehicles to non-retail customers in violation of the express terms of the Dealer Agreement (*Id.* ¶ 99.)[1]

## **LEGAL STANDARD**

A court will deny a motion to dismiss when a plaintiff alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).

To satisfy Federal Rule of Civil Procedure 9(b), "the plaintiff must allege 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). "That includes 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the

---

[1] In their Motion to Dismiss, Defendants emphasize the parallel administrative proceeding before the Illinois Motor Vehicle Board. *See* Mot. at 3–4. That proceeding has no bearing on the Motion to Dismiss, nor does it in any way affect the claims ALA makes in its Complaint.

misrepresentation was communicated to the plaintiff.'" *Id.* (quoting *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)). As Defendants concede (Mot. at 7), however, when the alleged fraud involves repeated actions over time, a plaintiff "need only allege representative examples of the fraud with particularity." *United States ex rel. Stop Illinois Marketing Fraud, LLC v. Addus HomeCare Corp.*, No. 13 CV 9059, 2017 WL 467673, at *10 (N.D. Ill. Feb. 3, 2017). Further, Rule 9(b)'s particularly requirements "must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corely v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). This is especially true when the claims relate to the "particulars of [the defendant's] internal operations." *United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F.Supp.3d 1106, 1114 (N.D. Ill. 2018).

## ARGUMENT

I. **ALA Has Stated a Plausible Fraud Claim in Count I.**

The Court should deny the motion to dismiss, first and foremost, because the Complaint contains sufficient factual content to state a plausible fraud claim against Defendants. "A common-law fraud claim in Illinois requires five elements: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)).

ALA has plausibly alleged all five elements here. ALA alleges that Defendants made false statements to ALA by submitting false names of buyers of Lamborghini vehicles (Compl. ¶¶ 8–9, 52–63, 70, 89, 92); that Defendants knew the information was false, because the names they

5

submitted to ALA differed from those in Defendants' own files (*id.* ¶¶ 68, 70, 74–75, 90, 93); that Defendants provided this false information to ALA to procure bonus payments (*id.* ¶¶ 11, 67, 71); that ALA relied on Defendants' false statements to its detriment when it decided to pay the bonuses (*id.* ¶ 94); and that ALA suffered at least $4.3 million in damages as a result, inclusive of the bonus monies it would not have paid to Gold Coast but for the fraud (*id*).

ALA has also pled its fraud claim with particularity sufficient to satisfy Rule 9(b). The Complaint includes detailed allegations about four instances of fraud that are representative of Defendants' scheme as a whole—namely, the sales of vehicles the Complaint identifies as "Urus #1," "Urus #2," "Urus #3," and "Huracan #1." (Compl. ¶¶ 53–63.) For each such instance, ALA alleges:

- **Who.** Gold Coast, and specifically Defendant Kanwar, "submitted the sham buyer information to ALA" at the direction of Defendant Perillo. (*Id.* ¶¶ 53–63, 70, 73–75.)

- **What.** Defendants misrepresented that the buyers were "a Chicago-based former professional athlete," "the CEO of a chiropractic clinic in Minnesota," and "a Chicago resident," when in fact the sales were made to different entities and individuals engaged in the re-sale of Lamborghini vehicles and other non-retail uses. (*Id.* ¶¶ 53–63.)

- **When.** These specific transactions took place in the summer of 2022 and spring of 2023 (with the scheme alleged to have been in place since at least 2019). (*Id.* ¶¶ 51, 53, 57, 62.)

- **Where and How.** Gold Coast "submitt[ed] buyer information to ALA via ALA's sales reporting system (Lamborghini Online Order Management or 'LOOM')." (*Id.* ¶¶ 53–63, 70.)

These allegations are more than sufficient to meet Rule 9(b)'s particularity requirements.[2]

*See supra* at 5. ALA has therefore stated a claim for fraud against Defendants.

---

[2] Defendants argue that "an equally plausible inference" to draw from the fact that the customer names reported to ALA do not match the customer names in Gold Coast's files is that "the purchaser changed after it the order was initially reported[] or that a customer titled the vehicle in the name of an entity or some other person, rather than his or her own name." Mot. at 12. However, "Defendants' attempts to provide innocent, alternative explanations . . . are unpersuasive at this stage in the litigation," and ALA does "not have the burden to discount all of Defendants' innocent

**II.     Defendants' Arguments That ALA Has Not Satisfied Rule 9(b) Are Meritless.**

Defendants' motion repeatedly criticizes ALA for failing to allege more "what" and "who" facts about the broader fraudulent scheme. (Mot. at 9–13.) As Defendants concede, however, where "a fraud scheme involves numerous transactions over time, a plaintiff need not plead specifics with respect to every instance of the fraud." *United States v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *3 (N.D. Ill. July 20, 2007); *see also* Mot. at 7. Representative examples of the fraud suffice. *Addus*, 2017 WL 467673, at *10 ("Courts have generally agreed that when a [plaintiff] pleads lengthy fraudulent schemes, the [plaintiff] need only allege representative examples of the fraud with particularity."); *see also, e.g.*, *United States ex rel. Upton v. Fam. Health Network, Inc.*, 900 F. Supp. 2d 821, 829 (N.D. Ill. 2012) (holding that plaintiffs satisfied Rule 9(b) where they "allege[d] several instances of the fraudulent scheme in practice"). ALA has met that standard here.

Relatedly, Defendants' motion faults ALA for failing to allege each Defendant's individual role in the fraudulent scheme with greater particularity. Mot. at 9–13. It is well-established in the Seventh Circuit, however, that "[t]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley*, 142 F.3d at 1051; *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("Specificity requirements may be relaxed, of course, when the details are within the defendant's exclusive knowledge."); *Addus*, 2017 WL 467673, at *11 (same). Plaintiffs are thus not "expected to know the particulars

---

explanations." *United States ex rel. Upton v. Fam. Health Network, Inc.*, 900 F. Supp. 2d 821, 829–30 (N.D. Ill. 2012); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854–55 (7th Cir. 2009) (explaining that a pleading does not need to "exclude all possibility of honesty in order to give the particulars of fraud" and that "[t]o say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement)"). ALA has alleged the nature of the fraud in detail, and that is sufficient for purposes of Rule 9(b). *See Upton*, 900 F. Supp. 2d at 830; *Lusby*, 570 F.3d at 855.

7

of [the defendant's] internal operations" to plead a fraud claim. *Roche*, 318 F. Supp. 3d at 1114. Rather, "[i]n the Seventh Circuit . . . a plaintiff who provides a 'general outline of the fraud scheme' sufficient to 'reasonably notify the defendants of their purported role' in the fraud satisfies Rule 9(b)." *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 812 (N.D. Ill. 2016) (citing cases).

For example, in *Roche*, the district court framed "[t]he critical question" as "whether [plaintiff's] allegations [were] sufficient to 'inform each defendant of the nature of his alleged participation in the fraud.'" 318 F. Supp. 3d at 1114 (quoting *Clay Fin. LLC v. Mandell*, No. 16 C 11571, 2017 WL 3581142, at *7 (N.D. Ill. Aug. 18, 2017)). The plaintiff there had "identifie[d] by name the individuals she claim[ed] participated in the allegedly unlawful agreement" and "describe[d] the role of each." *Id.* The court held that these allegations satisfied Rule 9(b) because the defendant "need[ed] no more to understand the nature of its alleged participation in the scheme." *Id.*

Similarly, in *Endo v. Albertine*, the court emphasized that "[t]he purpose of Rule 9(b) is to apprise the party alleged to have committed fraud of the charges against him or her and to permit an adequate response." 812 F. Supp. 1479, 1497 (N.D. Ill. 1993). There, the court held that the plaintiffs' allegations satisfied Rule 9(b) because they had alleged "the time, place, contents and consequences of any misrepresentations" and "the defendants [were] fully able to adequately respond to these charges." *Id.* Notably, the court did not require plaintiffs to set forth the role of each defendant with greater particularity because "the plaintiffs ha[d] no way of knowing which defendant made which misrepresentations or omitted which material facts." *Id.*

Here, as in *Roche* and *Endo*, ALA has made allegations that identify each participant in the fraud by name and give Defendants sufficient notice of their respective roles in the scheme. ALA

8

alleges that Gold Coast knowingly submitted false buyer information to ALA to procure bonus payments (Compl. ¶¶ 8, 53–63, 65, 67–71); that Kanwar was primarily responsible for not only executing the sales to non-retail buyers, but also for reporting the false buyer information to ALA (*id.* ¶¶ 73–74); and that Perillo, as President and General Manager of Gold Coast, manages and oversees all aspects of the dealership's operations, including all sales transactions processed by his employees, and devised and directed the scheme (*id.* ¶¶ 27–30, 75).

Defendants also attack the Complaint's purported lack of "specifics about Perillo's direction or instruction, such as how, where, or when Perillo provided these alleged 'instructions' [to Kanwar] or specifically what the alleged 'instructions' were." (Mot. at 10–11.) But that information is within Defendants' knowledge, and ALA is neither expected nor required to plead such information here. *See Roche*, 318 F. Supp. 3d at 1114; *Mandell*, 2017 WL 3581142, at *7; *Jepson*, 34 F.3d at 1328. Likewise, ALA's allegations on "information and belief" about Perillo's involvement in the fraudulent scheme suffice for Rule 9(b) because (1) more specific facts information about Perillo's exact role in the fraud, including his instructions to Kanwar, are not accessible to ALA, and (2) ALA has provided the grounds for its suspicions that Perillo provided overall direction for the fraudulent activities. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). In fact, Gold Coast's Dealer Agreement with ALA specifically states that Perillo is the dealership's General Manager and a "key employee[] involved in the sales of the Contractual Products," *e.g.*, Lamborghini vehicles. (Ex. 1 to Mot., ECF No. 23-1 at Appx. 1, p. 11; *see also* Compl. ¶¶ 27–30, 75.)

Regardless, Defendants are in no position to make such an argument. When ALA sought access to five years of records to investigate this exact re-sale issue (as was its right under the Dealer Agreement), Defendants refused to provide any information for all but the most recent 12

9

months. Defendants should not be allowed to stiff arm ALA's efforts to learn more about the facts, per its rights under the Dealer Agreement, and then argue that ALA must add more details to the (already sufficiently pled) claims. *See Corley*, 142 F.3d at 1051 (allowing plaintiff to plead certain acts "more generally" because plaintiff "had been denied access in discovery to information that would identify [additional facts]").

Defendants' cited authorities do not support their arguments either. Defendants rely heavily on *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029 (N.D. Ill. 2003), Mot. at 9–10, but that was a *summary judgment decision* and is therefore inapposite where, as here, the moving party is seeking dismissal at the *pleading stage*. *See Lusby*, 570 F.3d at 854–55 ("To say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement).").

Moreover, the plaintiffs in both *Firstar Bank* and *Evergreen Marine Corporation v. Division Sales, Inc.*, No. 01 C 4933, 2003 WL 1127905 (N.D. Ill. Mar. 12, 2003), claimed that the defendants were liable solely because they were corporate officers and allegedly had knowledge of the fraud. *See Firstar Bank*, 249 F. Supp. 2d at 1046; *Evergreen*, 2003 WL 1127905 at *7 (plaintiffs did "not indicate that [defendant] actively participated in or personally authorized the fraudulent conduct," and "allegations of knowledge, without more, are insufficient to state a fraud claim"). By contrast, ALA alleges that Perillo actively participated in the fraud by supervising the fraudulent activities and telling his employees, including Kanwar, to falsely report the true identities of the purchasers of the vehicles. (Compl. ¶ 75.) These allegations are sufficient to state a fraud claim against Perillo, just as the rest of ALA's allegations state a fraud claim against the other Defendants.

**III.     Defendants' Argument That ALA's Fraud (Count I) and Contract (Count II) Claims Are Duplicative is Meritless.**

Defendants also seek dismissal of ALA's fraud claim on the purported basis that it is duplicative of ALA's breach of contract claim. Defendants are wrong: the Complaint alleges "fraudulent act[s] distinct from the alleged breach of contract." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011).

Simply stated, ALA's breach of contract claim asserts that Gold Coast breached its contract with ALA by selling new Lamborghini vehicles to non-retail customers. ALA's fraud claim, on the other hand, asserts that Defendants made affirmative misrepresentations to ALA about the true identities of those non-retail customers to conceal their conduct from ALA and procure bonus payments they otherwise would have been ineligible for. (*Compare* Compl. ¶¶ 89–93 *with* ¶¶ 99–100.) ALA asserts specific misrepresentations beyond Gold Coast's promise and failure to perform under the contract—namely, its reporting of false buyer names to ALA through the LOOM database. (*Id.* ¶¶ 52–63, 70–71.) The breach of contract claim stands independently of those misrepresentations and therefore the fraud claim may proceed.

Indeed, courts regularly permit fraud claims to proceed alongside breach of contract claims when, as here, the defendant made affirmative misrepresentations beyond the defendant's basic failure to perform. *See, e.g., NHC, LLC v. Centaur Constr. Co.*, No. 19 C 6332, 2023 WL 2525493, at *6 (N.D. Ill. Mar. 15, 2023) (declining to grant judgment as a matter of law on a fraud claim on a theory of duplicative claims because "whereas failing to pay the subcontractors [was] a basis for the alleged breach of contract, misleading NHC to believe that the funds actually were going to the subcontractors—while transferring approximately $2 million to [other individuals'] personal bank accounts—was a 'fraudulent act' that was 'distinct from the alleged breach'"), *appeal docketed*, No. 23-1719 (7th Cir. Apr. 17, 2023); *Stephens v. C&K Trucking, LLC*, No. 20-CV-

11

4305, 2021 WL 4978451, at *2 (N.D. Ill. May 17, 2021) ("Plaintiffs allege specifically that Defendant lied about documentation requirements for receiving pay, provided contradictory and misleading statements in response to pay disputes, and unilaterally changed contract terms regarding pay without Plaintiffs' consent or knowledge. These allegations do not merely describe Defendant's breach of its contractual promise to pay Plaintiffs certain amounts; they describe misrepresentations and omissions that give rise to fraud.") (internal citations omitted)); *Petri v. Gatlin*, 997 F. Supp. 956, 968 (N.D. Ill. 1997) ("However, the plaintiffs allege not just that the defendants regularly breached their natural gas contracts, but also that the defendants lured consumers into signing those contracts by disseminating promotional brochures containing misrepresentations of material facts."); *Rumford v. Countrywide Funding Corp.*, 678 N.E.2d 369, 373 (Ill. App. Ct. 1997) (determining that the plaintiff's claim "was not based on a simple breach of contract but on an allegation that defendant was engaged in a pattern of misrepresenting to customers that additional charges would not be assessed[.]").[3]

The recent decision in *United States ex rel. Milazzo v. Joel Kennedy Constructing Corp.*, 584 F. Supp. 3d 595 (N.D. Ill. 2022) is illustrative. There, the court determined under very similar circumstances that both fraud and breach of contract claims could proceed even when both claims related to a residency requirement in an underlying contract. The contract claim rested on allegations that the defendant contractor did not meet the contract's residency requirement, while the fraud claim was premised on defendants' efforts to conceal this failure. *Id.* at 604–05, 634. The plaintiff alleged that, as part of those efforts, the defendants kept two different copies of the payroll

---

[3] Though some of these cases discuss claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") rather than common-law fraud, their reasoning remains applicable here just the same. *See Greenberger*, 631 F.3d at 401 (dismissing a common-law fraud claim as duplicative "on the same basic reasoning" as it dismissed the ICFA claim).

12

documentation: one submitted to the payroll company documenting the actual workers paid, and the other submitted to the city for purposes of certifying the residency requirements. *Id.* at 605. The plaintiff further alleged that the defendant submitted "fake Chicago addresses for employees who did not actually reside in Chicago" even though defendants "knew that they did not live in Chicago[.]" *Id.* The Court explained that the two counts were not duplicative because the fraud claim was "not predicated on [defendant's] failure to comply with the contractual residency requirements, but on the defendants' *scheme to obscure their noncompliance* through the submission of false or incomplete payroll certifications." *Id.* at 634 (emphasis added).

The same is true for ALA's allegations against Defendants here: its fraud claim is premised on Defendants' "scheme to obscure their noncompliance through the submission of false" buyer information to ALA, rather than simple non-compliance with the contract by making those sales. *Id.* Just as the defendants in *Joel Kennedy* took actions to conceal the true residency of their workers to cover up breach of the contract's residency requirement, Gold Coast, Perillo, and Kanwar took actions to conceal the true identity of their customers to cover up Gold Coast's breach—namely, by knowingly misrepresenting the buyer's identities to ALA so that ALA would pay bonuses to Gold Coast. Defendants' knowing misrepresentations of the identities of buyers were therefore distinct from the act of simply selling Lamborghini vehicles to non-retail customers (in breach of contract), thus placing the two claims on separate factual bases.

The cases cited by Defendants are readily distinguishable on the same basis. For example, the court in *Greenberger* dismissed plaintiff's statutory and common law fraud claims because the plaintiff in that case "failed to identify any fraudulent act distinct from the alleged breach of contract[.]" 631 F.3d at 400–01. Moreover, the *Greenberger* court distinguished several cases where courts had allowed fraud claims to proceed alongside breach of contract claims on the

13

ground that those cases "involved *affirmative acts of misrepresentation* and not a simple breach of contract . . ." *Id.* at 400 (emphasis added). This is one of those cases.

Likewise, in *Bucciarelli-Tieger v. Victory Records, Inc.*, the plaintiffs alleged that the defendants breached their contractual obligation to submit periodic royalty statements by submitting royalty statements that were incorrect and also committed fraud. 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007). The Court dismissed the fraud claim reasoning that the plaintiffs "made no allegations that they were induced to take any action . . . because of these allegedly fraudulent royalty statements, nor could they—they were already bound by the agreement." *Id.* That is not the case here. ALA has alleged (and will prove) Defendants' misrepresentations induced it to act, as absent those misrepresentations, ALA would not have made bonus payments to Gold Coast. (Compl. ¶¶ 46–50.)

In sum, the fraud claim alleges conduct beyond that which forms the basis for the breach of contract claim, foreclosing Defendants' argument that the claim fails as duplicative.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion to dismiss ALA's fraud claim.

14

Dated: April 11, 2024 Respectfully submitted,

By:/s/ Nicholas W. Laird

Owen H. Smith
Nicholas W. Laird
Marlow Svatek
Murphy Olivia Glass
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Tel: (312) 984-3100
Fax: (312) 984-3150
Email: owen.smith@bfkn.com
Email: nick.laird@bfkn.com
Email: marlow.svatek@bfkn.com
Email: olivia.glass@bfkn.com

*Attorneys for Plaintiff Automobili Lamborghini America, LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on April 11, 2024, a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS,** was served upon all counsel of record via email.

Dated: April 11, 2024                                    /s/ Marlow Svatek