UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTOMOBILI LAMBORGHINI AMERICA LLC., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>GOLD COAST EXOTIC IMPORTS, LLC, )<br>JOSEPH J. PERRILO SR., and TAHIR ALI )<br>KANWAR )<br>)<br>Defendants. ) | No.  24 C 00162<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Automobili Lamborghini America, LLC ("Plaintiff" or "ALA"), brings this diversity action against Gold Coast Exotic Imports, LLC. ("Gold Coast"), Joseph J. Perillo, Sr. ("Perillo"), and Tahir Ali Kanwar ("Kanwar") (collectively "Defendants") claiming fraud and breach of contract under Illinois law.[1]  Defendants move to dismiss of the Count I (fraud) of Plaintiff's Complaint under Federal Rule of Procedure 12(b)(6) for failure to state a claim on which relief may be granted.  For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

Because state laws impose restrictions on direct sales of vehicles by car manufacturers, manufacturers and distributors often use local dealerships as the primary point of contact between brand and buyer.  (*See* Compl. ¶ 3.)  For manufacturers and distributors of high-end goods who seek to maintain a reputation for luxury, this presents a challenge; the manufacturers must

---

[1] The court's jurisdiction is secure.  ALA is an LLC whose sole member is Volkswagen Group of America, Inc. ("VWGoA"), a New Jersey corporation with its principal place of business in Virginia.  (Compl. [1], ¶ 14.)  Gold Coast is an LLC whose sole member, Defendant Perillo, is a citizen and resident of Illinois, as is Defendant Kanwar.  (*Id*. ¶¶ 21, 22.)  Plaintiff has claimed some $4 million in damages (*id.* ¶ 50) far in excess of the $75,000 jurisdictional threshold under 28 U.S.C. § 1332(a).

maintain a brand image and ensure a high level of customer service without exercising hands-on control of the buying experience. (*See id*. ¶ 5.) The challenge is exacerbated when dealerships convey stock to re-sellers who in turn sell to customers without providing a guarantee of high-quality service. (*See id*.) Plaintiff ALA, the U.S. importer and distributor of Lamborghini vehicles, has addressed this challenge by prohibiting dealerships entrusted with Lamborghini products from selling new vehicles to anyone other than "bona fide retail customers." (*Id*. ¶ 4.) ALA's policies prohibit dealers from selling a new vehicle to anyone that the dealer "knows or reasonably should have known intends to sell the vehicle to a wholesaler, an independent, a broker, or a dealer that is not an authorized Lamborghini dealer." (*Id*. ¶¶ 6, 39; *see also* Sales Policies [23-1], 16.) Further, ALA requires its dealers to "engage in due diligence to confirm that the customer to whom it is selling a vehicle is an actual retail customer" and "maintain documentation of their due diligence." (Compl. ¶ 41.) Plaintiff maintains the right to audit dealer records in order to enforce this policy. (*Id*. ¶ 42.) Dealers who sign on with ALA are compensated well for compliance with these policies; they receive thousands of dollars in bonus payments for each car sold in compliance with ALA policies. (*See id.* ¶¶ 46, 49.) Specifically, since 2019, bonuses under ALA's Dealer Incentive Bonus Program ("Bonus Program") have been available to dealers who (1) attain 100% achievement of the quarterly Delivery to Customer Target, (2) correctly report in Lamborghini Online Order Management ("LOOM") each vehicle delivery to a final retail customer; and (3) properly document the delivery of each vehicle to the final customer and maintain such documentation in their records. (*See id*. ¶ 48; *see also* Bonus Program [23-3], 9.)

On or about December 11, 2009, Plaintiff entered into a contract (the "Dealer Agreement") with Defendant Gold Coast, a dealership located in the Gold Coast neighborhood of Chicago, for Gold Coast to serve as an authorized dealer of Lamborghini vehicles. (*Id*. ¶¶ 25-26; *see also* Dealer Agreement [23-1].) The agreement between the parties was signed by Gold Coast's president, Defendant Perillo, on behalf of Gold Coast. (*Id*. ¶ 27.) Plaintiff alleges that beginning in 2019, Defendants have violated the terms of that agreement by selling Lamborghini vehicles to

known resellers, misreporting these sales to ALA, and claiming bonus payments despite their violations of the Dealer Agreement and Sales Policies. (Compl. ¶¶ 51, 71.) The Complaint presents four examples. First, in March 2023, Defendants reported to Plaintiff that it had sold a new vehicle, a Lamborghini Urus ("Urus #1"), to a Chicago-based former professional athlete when, in fact, Defendants' internal records audited by Plaintiff (the Complaint does not state when this audit occurred) show that Urus #1 was sold to a "known luxury vehicle re-seller," an LLC in Montana. (*Id.* ¶¶ 53-54.) Second, Defendants allegedly sold another vehicle ("Urus #2") to this same Montana LLC, and again falsely reported the sale to Plaintiff. (*Id.* ¶ 55.) Third, in August 2022, Defendants reported to Plaintiff that they had sold a new Lamborghini Huracan ("Huracan #1") to the CEO of a chiropractic clinic located in Minnesota when, Plaintiff alleges, the car was in fact sold to a "known convicted criminal" running a "luxury vehicle sales and rental service in Miami, Florida." (*Id.* ¶¶ 57-58.) In this case, Plaintiff did not discover a discrepancy between the named customer in Defendants' books and the name reported through LOOM, but rather observed that Huracan #1 had been registered in Miami in April 2023 under a different name than the one Defendants had reported to LOOM, and was posted for sale on a foreign luxury sale platform advertising that the car had been driven less than 30 miles. (*Id.* ¶¶ 60-61.) Fourth, Plaintiff alleges that Defendants made a second sale ("Urus #3") to the same "known convicted criminal" based in Miami who allegedly purchased Huracan #1, falsely reporting it as a sale to a Chicago resident. (*Id.* ¶ 62.)

In a 2023 audit of Defendants' records since 2022, Plaintiff identified 32 vehicles that Defendants allegedly disposed of in violation of the parties' agreement, falling into one of four categories: (1) Defendants' records reflect sale to a customer whose name differs from the one reported to Plaintiff; (2) Defendants' records show repeated sales to the same customer within a three-month period; (3) Defendants' records show sales to individuals with "known associations to the automotive industry or luxury rental companies," or (4) Defendants' records show sales to individuals with criminal histories of fraud. (*Id.* ¶ 64.) Plaintiff alleges further that it has requested

3

Defendants' records going back five years pursuant to the Dealer Agreement, but Defendants have refused to allow Plaintiff to see any records before 2022 and have otherwise "frustrated ALA's inspection." (*Id*. ¶¶ 65, 84.) Since 2019, Plaintiff has paid Defendants more than four million dollars in bonus payments. (*Id*. ¶ 50.)

On January 5, 2024, Plaintiff filed this lawsuit charging Defendants with fraud (Count I) and breach of contract (Count II) under Illinois law. Plaintiff claims that Defendants committed fraud by knowingly misrepresenting to Plaintiff, through their sales reporting to LOOM, that they were selling new vehicles to retail customers when they were in fact breaching the Dealer Agreement by selling to known resellers. (*Id.* ¶ 89.) Plaintiff further claims that Defendants breached their contract with Plaintiff by both selling to non-retail customers and by obstructing Plaintiff's audit of their records. (*Id*. ¶¶ 99-100.) Among the Defendants, in addition to Gold Coast itself, Plaintiff has included Perillo—the Gold Coast president—and Kanwar—a Gold Coast employee—as "key enablers of Gold Coast's fraudulent scheme." (*Id*. ¶ 72.) The Complaint alleges that Kanwar was personally involved in handling "all aspects" of the fraudulent vehicle sales, from completing the sales paperwork to submitting the allegedly false information to LOOM. (*Id*. ¶¶ 73-74.) It further alleges that Perillo provided "overall direction" for the scheme and instructed Kanwar and other employees to misrepresent the purchasers of new vehicles to Plaintiff. (*Id*. ¶ 75.)

Defendants have moved to dismiss Plaintiff's fraud claim in Count I on two grounds. First, Defendants argue that Plaintiff's fraud claim is based on identical facts and conduct as its breach of contract claim, and thus must be dismissed under Illinois law. (*See* Defs.' Mot. to Dismiss [23], 7.) Second, they argue that Plaintiff has failed to state a claim against all three defendants with the requisite specificity required under Federal Rule of Civil Procedure 9(b). (*Id*. at 9.) They contend that Plaintiff's allegations do not establish that Perillo was personally involved in the allegedly fraudulent scheme; do not establish that Kanwar had the requisite fraudulent mental

4

state for liability under Illinois law, and do not identify the content of statements made by Gold Coast to LOOM with sufficient specificity. (*Id.* at 9, 12, 13.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint "by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). To survive such a motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must accept the factual, non-conclusory allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

When a party alleges fraud, the party "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). To meet this heightened "particularity" standard, the party alleging fraud must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff," *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) (citations omitted), or the "who, what, when, and where" of the alleged fraud. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The particularity requirement is "relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). And, while the Seventh Circuit "frown[s] on" allegations of fraud made on information and belief, *see Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013), such allegations may be credited where "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631

5

F.3d 436, 443 (7th Cir. 2011) (quotations and citations omitted). In circumstances like this one, where a plaintiff alleges a scheme involving a lengthy series of fraudulent acts or transactions, courts in this district generally require the plaintiff to amplify general allegations of a fraud scheme with specific evidence of a "representative example" of the alleged scheme, though she need not plead every instance of the fraudulent scheme with particularity. *See, e.g., United States ex rel. Stop Illinois Marketing Fraud LLC v. Addus HomeCare Corp.*, No. 13 CV 9059, 2017 WL 467673 at *10 (N.D. Ill. Feb. 3, 2017); *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 WL 3583980, at *3 (N.D. Ill. July 18, 2014); *United States ex rel. Obert-Hong v. Advocate Health Care*, No. 99 C 5806, 2001 WL 303692, at *3 (N.D. Ill. Mar. 28, 2001).

## DISCUSSION

### I. Whether Fraud Claim is Duplicative

Defendants first contend that Plaintiff's fraud claim must be dismissed as duplicative of the breach of contract claim. (*See* Defs.' Mot. to Dismiss at 7.) The parties appear to agree that the applicable rule here is established in *Greenberger v. GEICO General Insurance Co.;* under the standard set forth there, a plaintiff alleging fraud in a contractual setting must be able to "identify any fraudulent act distinct from the alleged breach of contract." 631 F.3d 392, 401 (7th Cir. 2011). Otherwise, "the common-law fraud count is just a reformulation of the contract claim" and must be dismissed. *Id.* Although the parties agree on the standard, they disagree on how it applies in this case. Defendants contend that Plaintiff's allegations that Defendants committed fraud by submitting false customer information to LOOM rest "on identical facts" as the breach of contract claim. (Defs.' Mot. to Dismiss at 8.) Plaintiff counters that its breach of contract claim is based on the sales of cars to known resellers, while its fraud claim is based on Defendants' misrepresentations to Plaintiff, constituting a different factual basis for the claim. (Pl.'s Resp. [29], 11.)

Plaintiff alleges that Defendants breached the Dealer Agreement in two ways: first by selling new vehicles to known resellers, and second by refusing to give Plaintiff full access to their

6

records. (Compl. ¶¶ 99-100.) These actions, according to Plaintiff, directly violated express conditions of the contract contained in the Dealer Agreement. (*Id.*) Plaintiff's fraud claim, on the other hand, does not relate to the actual sale of vehicles or access to records, but instead focuses on misrepresentations made by Defendants to Plaintiff after the sales had been made. (*See id.* ¶¶ 89-92.) Thus, Plaintiff alleges that Defendants breached their contract by making the sales in the first place; they committed fraud by misrepresenting those sales. The concealment of those sales and submission of false information regarding the sales to LOOM thus constituted "distinct facts" separate from the breach of contract claims and independently giving rise to the fraud allegations.

Defendants challenge this construction, but the cases they cite are distinguishable. First, Defendants cite *Bucciarelli-Tieger v. Victory Records*. In that case, the court dismissed plaintiff's fraud claims as duplicative of breach of contract claims where the plaintiff music band had alleged the defendant record company had breached their contract by submitting fraudulent royalty statements. 488 F. Supp. 2d 702, 711 (N.D. Ill. 2007). Importantly, the fraud and breach of contract claims in *Bucciarelli-Tieger* were based on the same exact conduct—the submission of false royalty statements was both the breach *and* the fraud. *Id*. Here, Plaintiff has not alleged that the submission of false information to LOOM was a breach of contract. Indeed, it appears that submitting accurate information to LOOM was merely a requirement for receiving payments from the Bonus Program, not a provision of the Dealer Agreement. (*See* Compl. ¶ 48.) Thus, unlike in *Bucciarelli-Tieger*, the conduct alleged to support Plaintiff's fraud claim (making false statements to LOOM) did not give rise to the breach of contract claim, and the conduct alleged in Plaintiff's breach of contract claim (selling to a reseller and preventing access to records in violation of the Sales Policies) did not give rise to the fraud claim.

Defendants also cite to *Della Parola Capital Mgmt., LLC v. Blaze Portfolio Systems*, where the plaintiff hedge fund sued defendant software company for breach of contract and fraud (among other claims) after defendant's software malfunctioned and led to erroneous trades. No.

7

21 C 321, 2021 WL 3674613 at *2 (N.D. Ill. Aug. 1 specific "agreement . . . that went awry," and the facts supporting Plaintiff's fraud claim had not occurred when Defendant was allegedly making sales in violation of the Dealer Agreement.

The principle articulated in *Greenberger* bars plaintiffs from "convert[ing] any suit for breach of contract into a consumer fraud action" by alleging that merely because a defendant failed to meet a contractual promise, the contractual promise was made fraudulently. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801 (2005) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill.App.3d 308, 312, 244 Ill.Dec. 100, 724 N.E.2d 988 (2nd. Dist. 2000)). The paradigmatic example of such a claim, presented by the facts in *Greenberger*, is where plaintiff claims that the defendant fraudulently promised to fulfill some contractual term, while also suing the defendant for breach of that contractual term. *See Greenberger*, 631 F.3d at 399. *Bucciarelli-Tieger* and *Della Parola* are akin to cases where the *Greenberger* rule most often requires dismissal of a fraud claim: where an event giving rise to a breach of contract claim at the same time gives rise to a claim of fraud. *See, e.g.*, *GuideOne Mut. Ins. Co. v. Good Shepherd Lutheran Church*, No. 20 CV 4730, 2021 WL 3077658 (N.D. Ill. July 21, 2021), *Berkot, Ltd. v. Midwest Refrigeration Corp.*, No. 12 C 3885, 2013 WL 12618356 (N.D. Ill. May 14, 2013).

Courts generally do not apply this doctrine, however, where a breach occurs and "non-performance is concealed under a façade of compliance with one's contractual obligations and a series of dilatory, deceptive and punitive maneuvers designed to mask that non performance." *See Gen. Ins. Co. of Am. v. Clark Mali Corp.*, 08 C 2787, 2010 WL 1286076 (N.D. Ill. Mar. 30, 2010). Where a defendant creates a "façade of compliance" in order to frustrate the plaintiff's abilities to enforce a contract (or, in this case, to receive additional bonus payments) "the conduct goes beyond breach of contract and becomes indicative of fraud." *New Park Manor, Inc. v. N. Pointe Ins. Co.*, No. 13 C 4537, 2013 WL 5408856 (N.D. Ill. Sept. 26, 2013); *see also United States ex rel. Milazzo v. Joel Kennedy Constructing Corp.,* 584 F. Supp. 3d 595, 634 (N.D. Ill. 2022) ("[plaintiff's fraud claim] is not predicated on [defendant's] failure to comply with the

8

contractual residency requirements, but on the defendants' scheme to obscure their noncompliance through the submission of false or incomplete payroll certifications"). Reading the allegations generously to Plaintiff, as required at this stage, the fraud allegations fall into this second category of cases: the allegedly fraudulent statements occurred only after the breaching conduct and worked both to conceal the breach from Plaintiff and to induce Plaintiff to make additional payments. For this reason, the court finds that Plaintiff's fraud claim is based on "distinct facts" and is not barred by *Greenberger*.[2]

In their reply brief, Defendants further argue that the fraud claim is duplicative as it would result in double recovery for the same harm, and that Plaintiff has not claimed to have relied on Defendant's fraudulent statements to its detriment. (*See* Defs.' Reply [34], 2-3.) Though Defendants only raised these issues in reply, the court will address them because they can be dealt with readily. First, though Plaintiff has identified no damages apart from the bonus payments (*see* Compl. ¶¶ 50, 94-95, 101), this does not require dismissal of the fraud claim; double recovery can be prevented through jury instructions or an amended judgment. *See City of Chicago v. Smollett*, 421 F. Supp. 3d 565, 576 (N.D. Ill. 2019). Further, given Illinois' independent tort doctrine, maintaining the fraud claim allows for a jury to award punitive damages even if it finds no additional compensatory damages from the fraud claim. *See generally Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Insurance Co.*, 962 F.2d 628, 638-39 (7th Cir. 1992)

---

[2] The court emphasizes here that Defendants have argued that the fraud claim must be dismissed as duplicative of Plaintiff's existing breach of contract claim—that is, a claim that Defendants have breached the Dealer Agreement. The court rejects that argument for reasons explained in the text. Notably, beyond a brief reference in their reply (*see* Defs.' Reply at 2), Defendants have not argued that the fraud claim duplicates a claim of breach of the Bonus Program. Such an argument would be distinct from the assertion that the fraud claim "rests on identical facts" of the existing breach of contract claim, as that claim makes no reference to the Bonus Program. (*See* Compl. ¶¶ 96-101.) The court therefore not need not address the question whether the fraud claim would be duplicative of a claim relating to the Bonus Program, but notes that it would raise a number of questions, including, for example, whether the Bonus Program was a contract, whether it was a distinct contract from the Dealer Agreement, whether the Bonus Program was a unilateral contract that could only be formed with compliance, and whether fraudulent representations made to meet reward conditions gives rise to tort or contract claims under Illinois law.

(discussing how Illinois law allows for an award of punitive damages for fraud without an award of any additional compensatory damages for breach of contract). Second, Plaintiff has sufficiently pleaded reliance on the misrepresentations: Plaintiff made bonus payments to Defendants (pursuant to the Bonus Program rather than the Dealer Agreement) in reliance on the accuracy of Defendants' LOOM reports (*see* Compl. ¶ 94)—not merely, as Defendants argue "in reliance on its contract." (Defs.' Reply at 3.)

I.  **Particularity of Fraud Claims**

    a.  **Claim Against Gold Coast**

Finally, Defendants argue that Plaintiff has not alleged a fraudulent scheme with sufficient particularity. Plaintiff has not pleaded a fraudulent scheme with sufficient particularity against Gold Coast, Defendants contend, because Plaintiff has not specified the content of the statements made through the LOOM system, nor the identity of the individual submitting the fraudulent information to the LOOM system. (*See* Defs.' Mot. to Dismiss at 13.) In short, Defendants argue that Plaintiff has not alleged the "what" and the "who" of the alleged fraud. The court disagrees.

Because Plaintiff has alleged a fraudulent scheme spanning at least four years and dozens of transactions (*see* Compl. ¶¶ 51, 64), Plaintiff can meet the heightened pleading standards under Rule 9(b) by alleging representative examples of the fraud with sufficient particularity. *See Obert-Hong*, 2001 WL 303692, at *3. Here, Plaintiff has provided four such examples: the sale and reporting of Urus #1, Urus #2, Urus #3, and Huracan #4. *See supra* p. 3. For each vehicle, Plaintiff has alleged that Defendants sold the vehicle to a known reseller, and subsequently falsely reported the sale through the LOOM system. *Id*. As the court reads Plaintiff's factual allegations describing these examples of the fraudulent scheme, the "what" is clear: Plaintiff has alleged that Defendant made statements to Plaintiff through the LOOM system that Urus #1 and Urus #2 were sold to a former professional athlete, that Urus #3 was sold to the CEO of chiropractic clinic, and that Huracan #1 was sold to a Chicago resident, when all of those statements were false. (*See* Compl. ¶¶ 53-63.) It is unclear what information Defendants would

10

argue is missing from the Complaint, much less what authority Defendant relies on to assert this information is insufficient.

Plaintiff has also alleged the "who" behind these representative examples. Specifically, the Complaint names Defendant Kanwar as the individual who "handled all material aspects of the Huracan and Urus sales described above" and "completed the sales paperwork for the concealed purchasers of the vehicles [and] submitted the sham buyer information to ALA." (*Id*. ¶¶ 73-74.) Taking these factual allegations as true, Plaintiff has indeed identified the person behind these instances of alleged fraud, and Plaintiff's provision of representative examples is not "vague and conclusory" as argued by Defendants. Plaintiff has pleaded sufficient facts to maintain their fraud claim against Gold Coast.

      **b.**      **Claim Against Perillo**

Defendants also argue that Plaintiff has failed to establish Defendant Perillo's personal involvement in the alleged fraudulent scheme with the requisite particularity under Rule 9(b). As Defendants properly assert, "[u]nder Illinois law, an officer or director is only liable for his corporation's fraud if the officer or director with knowledge, or recklessly without it, participates or assists in the fraud." *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029 (N.D. Ill. 2003) (citations omitted). The parties appear to agree that whether or not Plaintiff has sufficiently pleaded facts to establish a fraud claim against Perillo under Rule 9(b) turns on whether the court accepts Plaintiff's allegation that "[u]pon information and belief, Perillo provided overall direction for these fraudulent activities, instructing Kanwar and other Gold Coast employees to conceal and misrepresent the identities of purchasers . . . ." (Compl. ¶ 75.) As the parties also agree, though allegations made on information and belief are disfavored under Rule 9(b), the court may credit them if "(1) the facts constituting fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 443 (quotations omitted). The court finds that these conditions are met here.

11

First, the facts constituting fraud, particularly with respect to Perillo's involvement, are not within Plaintiff's control. Plaintiff is not claiming that Perillo himself submitted the false information, but that he directed the scheme with knowledge (*see* Compl. ¶ 75)—that is, "participat[ed] or assist[ed]" in the fraudulent scheme. *See Evergreen Marine Corp. v. Div. Sales, Inc.*, No. 01 C 4933, 2003 WL 1127905 at *7 (N.D. Ill. Mar. 12, 2003) ("A corporate officer . . . is liable for fraud if he actively participates in or personally authorizes the fraudulent conduct.") (citing *Hannah v. Midwest Ctr. for Disability Evaluation, Inc.*, 181 Ill.App.3d 67, 74, 536 N.E.2d 888 (1st Dist. 1989)). Plaintiff's ability to substantiate its claim against Perillo will require information about the internal workings and communications of Gold Coast's organization, and it is fair to assume that Plaintiff does not yet have access to this evidence. *See United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F. Supp. 3d 1106, 1114 (N.D. Ill. 2018) (noting that "[plaintiff] would not be expected to know the particulars of [defendant's] internal operations" at pleading stage).

Second, even without access to information regarding Gold Coast's internal operations, Plaintiff has provided grounds for suspicion that Perillo was involved in the fraud scheme. Plaintiff alleges that Perillo executed the Dealer Agreement on behalf of Gold Coast, was intimately involved in day-to-day operations during the relevant period, stays well-informed of "all dealership activities, sales and customer information," and regularly gives direction to employees. (Compl. ¶¶ 27-30.) While these allegations do not by themselves show that Perillo was participating in the fraud, they are a sufficient basis for belief that Perillo would be in a position to authorize Defendants' fraudulent conduct, particularly give the long duration and large scope of the alleged scheme.

The purpose for Rule 9(b)'s heightened pleading standard is to ensure that the allegations "inform each defendant of the nature of his alleged participation in the fraud." *Clay Fin. LLC v. Mandell*, No. 16 C 11571, 2017 WL 3581142, at *7 (N.D. Ill. Aug. 18, 2017) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)). Plaintiff's allegations are

sufficient at this stage to inform Perillo of his alleged direction and authorization of the fraudulent scheme.

### c. Claim Against Kanwar

Finally, Defendants argue that the court should dismiss the fraud claim against Kanwar because Plaintiff "fails to allege what fraudulent statement(s) he made, how he made them, or whether he knew they were false when he allegedly made them." (Defs.' Mot. to Dismiss at 12.) Again, the court disagrees. First, as explained above, Plaintiff has alleged that Kanwar is responsible for submitting false purchaser information for the sales of Urus #1, Urus #2, Urus #3, and Huracan #1. Plaintiff's complaint identifies those misrepresentations, states when they were made, explains their significance, and notes that they were made through the LOOM system. (*See* Compl. ¶¶ 53-63; *see also supra* p. 11.) These allegations are sufficient to satisfy Rule 9(b).

Second, Plaintiff has alleged that Kanwar was aware of the fraudulent scheme. The allegation that "Kanwar's knowing and substantial participation in this fraud has been crucial in its perpetration" (*id*. ¶ 74) is conclusory, but other factual allegations support the inference that he was aware of the fraud. Regarding the sales of the Urus and Huracan cars mentioned in the Complaint, Plaintiff alleges that Kanwar "submitted the sham buyer information to ALA" and "facilitated delivery of the vehicles to the true buyers." (*Id.*) Kanwar thus allegedly both knew the real purchasers of the vehicles and falsely identified them in reports to Plaintiff.

Defendants urge that Plaintiff's allegations support the "equally plausible inference'' that Defendants properly reported the purchasers of the vehicles, but those customers changed the name in Defendants' files or titled the vehicle in another person's name. (*See* Defs.' Mot. to Dismiss at 12.) But Defendants fail to explain how customers would have had access to Gold Coast's files or internal records, so the notion that customers would be responsible for the inaccuracies without Defendants' knowledge is not plausible at all, let alone "equally plausible." Moreover, even if the Defendants can provide reasonable explanations for discrepancies between the LOOM records and their internal records, the court is required to assume the truth of all of

13

Plaintiff's well-pleaded allegations; this includes allegations that Defendants in fact sold the Urus and Huracan cars to resellers. That discovery may demonstrate that Defendants acted innocently is no reason to dismiss Plaintiff's claims under 12(b)(6).

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is denied.

ENTER:

Date: September 30, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

14